**PALM BEACH ISLES ASSOCIATES, a Florida Partnership; Martin Slifka, individually and as trustee; Marjorie Margolis and Roberta Franklin, individuals as tenants in common; and the Estate of Joseph Slifka, represented by Alan Slifka and Barbara J. Slifka, co-executors, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 99–5030.**

United States Court of Appeals, Federal Circuit.

Decided Nov. 13, 2000.

Luther M. Taylor, of Palm Beach Gardens, Florida, and Michael J. Ryan, of Juno Beach, Florida, for plaintiffs-appellants. Of counsel were Nancie G. Marzulla, and Roger J. Marzulla, Defenders of Property Rights, of Washington, DC.

Jeffrey C. Dobbins, Attorney, Appellate Section, Environment and Natural Resources Division, Department of Justice of Washington, DC, for defendant-appellee. Ethan G. Shenkman, Attorney, Appellate Section, argued for defendant-appellee. On the brief were Lois J. Schiffer, Assistant Attorney General, Susan V. Cook, John A. Bryson, and Tamara N. Rountree, Attorneys. Of counsel on the brief was Dorothy Boardman, Office of Counsel, U.S. Army Corps of Engineers, of Jacksonville, Florida.

John D. Echeverria, Georgetown University Law Center, of Washington, DC, for amicus curiae Florida Audubon Society.

Timothy J. Dowling, Community Rights Counsel, of Washington, DC for amicus curiae Community Rights Counsel.

### ORDER

The United States filed a combined petition for panel rehearing and rehearing en banc. The court invited response from the appellants was filed. The court allowed the Florida Audubon Society, and the Community Rights Counsel to file amicus curiae briefs in support of the United

States. The court allowed the appellants to file a response to the amici briefs.

On November 6, 2000, the merits panel that heard this appeal issued an order that remanded this case to the trial court to conduct the proceedings as instructed in the original opinion of the court issued on March 31, 2000, and in addition to make the determinations contained in that order.

Upon consideration thereof,

IT IS ORDERED THAT:

The petition for rehearing en banc is denied.

Circuit Judge Gajarsa dissents in a separate opinion.

## ON PETITION FOR REHEARING EN BANC

GAJARSA, Circuit Judge, dissenting from the Order declining the suggestion for rehearing en banc.

Today a panel of this court radically amends the analysis that has been required by the Supreme Court for environmental regulatory takings. It undermines the jurisprudence of the Takings Clause. This court has declined to rehear the matter *en banc*. Because the panel has incorrectly construed the regulatory takings analysis, and improperly reconstructed the facts of this case to fit its ultimate conclusion, I respectfully dissent.

### I. *Regulatory Takings Jurisprudence*

### A. *Non–Categorical Takings*

The *Palm Beach* panel, in direct conflict with Supreme Court precedent and prior holdings of this court, belies the law of accepted regulatory takings analysis. In its initial opinion, the panel purports to describe the proper three-part inquiry for determining whether there has been a regulatory taking in *all* cases. *Compare Palm Beach Isles Assoc. v. United States,* 208 F.3d 1374, 1379 (Fed.Cir.2000), *with Penn Cent. Transp. Co. v. New York City,* 438 U.S. 104, 124, 98 S.Ct. 2646, 2659, 57 L.Ed.2d 631 (1978). The original panel opinion would find a taking of a property interest if "(1) there was a denial of eco-

nomically viable use of the property as a result of the regulatory imposition; (2) the property owner had distinct investment-backed expectations; and (3) it was an interest vested in the owner, as a matter of state property law, and not within the power of the state to regulate under common law nuisance doctrine." *See Palm Beach,* 208 F.3d at 1379 (citing *Loveladies Harbor, Inc. v. United States,* 28 F.3d 1171, 1179 (Fed.Cir.1994)). By its subsequent Order in answer to a petition for rehearing, the panel amends its decision, but reaffirms its erroneous understanding that in *Lucas,* the Supreme Court "redefined the third *Penn Central* criterion" for all regulatory takings cases. *See Palm Beach,* 231 F.3d at 1358 (Fed.Cir.2000).

Although the revised three-part test proposed by *Palm Beach* is proper for categorical cases only, the panel purports to extend this inquiry to partial takings as well. This is incorrect. By altering the third criterion for *all* regulatory takings cases, the panel's opinion manifests a sea change in regulatory takings jurisprudence. The proper inquiry under the third criterion examines the "character of the governmental action." *See Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. The revised three-part test proposed by *Palm Beach* removes the vital inquiry into the balance between the property owner's right to use the property and the public interest asserted by the regulation and replaces it with the nuisance exception examined in *Lucas.*

First, the panel improperly relies on the language of *Loveladies.* In *Loveladies* there was a categorical taking because the panel found that it was a case "in which the owner of the relevant parcel was deprived of all economically feasible use." *See Loveladies,* 28 F.3d at 1182. The revised three-part inquiry set forth in *Loveladies* was specifically recited to be only "applicable to the case before us." *Id.* at 1179. The revised inquiry in *Loveladies* did not replace the long-standing three-part takings analysis established by the

Supreme Court in *Penn Central* for non-categorical, or partial takings cases. *See Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659.

The Supreme Court makes clear that the takings analysis introduced by *Lucas* applies only in the "relatively rare" and "extraordinary circumstance when no productive or economically beneficial use of land is permitted." *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017, 112 S.Ct. 2886, 2894, 120 L.Ed.2d 798 (1992). Since *Lucas*, it has consistently been the law of this court that the standard three-part *Penn Central* regulatory takings analysis is proper in all non-categorical, or partial takings cases. *See, e.g., Good v. United States*, 189 F.3d 1355, 1360 (Fed.Cir.1999); *Avenal v. United States*, 100 F.3d 933, 937 (Fed.Cir.1997). Finally, the Supreme Court has recently reiterated that the proper regulatory takings analysis for non-categorical cases involves the three-part inquiry set forth in *Penn Central*. *See Phillips v. Washington Legal Foundation*, 524 U.S. 156, 176, 118 S.Ct. 1925, 1935, 141 L.Ed.2d 174 (1998); *see also* Kendall & Lord, *The Takings Project*, 25 B.C. Envt'l. Aff. L.Rev. 509, 576–77 (1998).

It is true that *Lucas* allows background principles of common law nuisance doctrine and property law prevent a taking in all cases. However, this recognition never replaced the necessary inquiry into the "character of the governmental action" for non-categorical, or partial regulatory takings cases.

### B. *Categorical Takings*

The *Palm Beach* panel also erroneously eliminates a crucial element of the categorical takings analysis. The panel holds that in a categorical regulatory taking, a property owner is entitled to recovery "without regard to consideration of investment-backed expectations." *See Palm Beach*, 231 F.3d at 1364. This holding is in direct conflict with Supreme Court precedent and prior holdings of this court. Investment-

backed expectations must be considered in *all* regulatory takings cases, even in those rare situations where the government has deprived a landowner of all economically beneficial use.

The panel bases its holding on a narrow interpretation of *Lucas*. *See Lucas*, 505 U.S. 1003, 112 S.Ct. 2886. The *Palm Beach* panel relies heavily on four separate and distinctly subjunctive sentences in *Lucas*, but fails to probe deeply the rationale behind the opinion. *See Palm Beach*, 231 F.3d 1362. Despite the existence of passages in *Lucas* which, at first blush, may seem to support the panel's reasoning, it is clear that the Supreme Court intended to preserve the element of investment-backed expectations in the categorical takings analysis.

First, the panel correctly recognizes that, prior to *Lucas*, the proper test for determining whether a regulatory taking has occurred was established by the Supreme Court in *Penn Central*. *See Penn Central*, 438 U.S. at 124, 98 S.Ct. at 2659. The *Penn Central* inquiry looks at three criteria: (1) the economic impact of the regulation, (2) the extent to which the regulation interferes with investment-backed expectations of the landowner, and (3) the nature or character of the governmental action. *Id.*

The Supreme Court begins its discussion in *Lucas* by recognizing "at least two discrete categories of regulatory action as compensable without case-specific inquiry into the *public interest advanced* in support of the restraint." *Lucas*, 505 U.S. at 1015, 112 S.Ct. at 2893 (emphasis added). The first category encompasses regulations that compel a property owner to suffer a physical invasion of his property. *Id.* The second category comprises regulations that deny all economically beneficial or productive use of the land – a "categorical" taking. *Id.*

It is true that subsequent passages in *Lucas* seem to equate a categorical taking with a physical taking.[1] *See Lucas*, 505

---

1. Equating a categorical regulatory taking to   a physical taking raises a very critical issue

U.S. at 1017, 112 S.Ct. at 2894 ("total deprivation of beneficial use is ... the equivalent of a taking"); *id.* at 1019, 112 S.Ct. at 2895 ("when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of the common good, that is, to leave his property economically idle, he has suffered a taking"). The subsequent discussion, however, describes the Supreme Court's rejection of South Carolina's "harmful" or "noxious" use justification for its regulation. *See id.* at 1020–27, 112 S.Ct. at 2896–99.

South Carolina argued that its regulation should be upheld because it substantially advanced legitimate public interests and prevented harm to adjacent ecological resources. *See id.* The Court engaged in a lengthy discussion recognizing that regulations can be seen as either conferring a benefit on the public or preventing harmful activity by the landowner. *See id.* (citing Sax, *Takings and the Police Power,* 74 Yale L.J. 36, 49 (1964)). The *Lucas* Court concluded that the "noxious use justification cannot be the basis for departing from our categorical rule that total regulatory takings must be compensated. If it were, departure would virtually always be allowed." *Id.* at 1026, 112 S.Ct. at 2899.

By rejecting South Carolina's argument, the Supreme Court reasoned that in *categorical* cases, there should be no inquiry into the "character of the governmental action" or the balance between the property owner's right to use the property and the public interest asserted by the regulation. *Cf. Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. This discussion affirms the initial statement in *Lucas* that categorical cases are "compensable without case-specific inquiry into the *public interest advanced* in support of the restraint." *Lucas,* 505 U.S. at 1015, 112 S.Ct. at 2893 (emphasis added).

Ultimately, *Lucas* reshaped the three-part *Penn Central* inquiry for categorical takings cases. The traditional takings analysis examines (1) economic impact, (2) investment-backed expectations, and (3) character of the governmental action. *See Penn Central,* 438 U.S. at 124, 98 S.Ct. at 2659. First, *Lucas* deals only with the rare situation where there is no remaining economically beneficial use. In other words, *Lucas* applies only to those cases where the economic impact – the *first* criterion of the *Penn Central* test, is categorical. Second, in categorical cases, *Lucas* holds that there is no case-specific inquiry into the public interest advanced – the *third* criterion of the *Penn Central* test. However, *Lucas* never removed or modified the necessary *second* criterion – investment-backed expectations.

Contrary to the panel's opinion in this case, the Supreme Court neither held nor reasoned that, "when there is a physical taking of land, or a regulatory taking that constitutes a total wipeout, investment-backed expectations play no role." *See Palm Beach,* 231 F.3d 1362. Instead, the discussion in *Lucas* supports this court's previous holding that "a *Lucas*-type taking, therefore, is categorical only in the sense that the courts do not balance the importance of the public interest advanced by the regulation against the regulation's imposition on private property rights." *See Good,* 189 F.3d at 1361 (citing *Loveladies,* 28 F.3d at 1179).

Justice Kennedy's concurrence in *Lucas* emphasizes this point. *See Lucas,* 505 U.S. at 1034, 112 S.Ct. at 2903 (Kennedy, J., concurring). Justice Kennedy affirms that a categorical taking "must be considered under the Takings Clause by reference to the owner's reasonable, investment-backed expectations." *Id.* Indeed, legal commentators agree that the categorical taking inquiry of *Lucas* eliminates only "the aspects of those tests that balanced the purpose of a regulation with its

that has not been discussed in *Lucas* or *Palm Beach* : Who owns fee title to the property when such a regulatory taking is found?

Does the government take title to the property in such an instance?

economic impact." *See* Hageman, *Fifth Amendment Takings Issues*, 9 J. Land Use & Envtl. L. 375, 386 (1994); *see also* Sugameli, *Takings Law Symposium*, 29 Envtl. L. 939, 978 (1999).

In fact, it is evident that *Lucas* specifically intended to *preserve* the inquiry into investment-backed expectations for even categorical cases. The Supreme Court intended such expectations to remain part of the "logically antecedent inquiry into the nature of the owner's estate." *See Lucas*, 505 U.S. at 1027, 112 S.Ct. at 2899 (emphasis added). Indeed, the Supreme Court anticipated that investment-backed expectations may necessarily preclude a taking if the inquiry "shows that the proscribed use interests were not part of [an owner's] title to begin with." *See id.*

The *Palm Beach* panel recognizes that *Lucas* allows background principles of common law nuisance doctrine and property law to prevent a taking in categorical cases. *See Palm Beach*, 208 F.3d at 1379; *see also* Babcock, *The Impact of Lucas*, 19 Harv. Envtl. L.Rev. 1 (1995) (examining the "public trust" as such a background principle). However, the panel overlooks the fact that *Lucas* acknowledges, in the same discussion, that a "property owner necessarily *expects* the uses of his property to be restricted, from time to time." *See Lucas*, 505 U.S. at 1027, 112 S.Ct. at 2899 (emphasis added). Consequently, *Lucas* recognizes that regulations and other limitations on property may "inhere" in the title, even when they deny all economically viable use.

In other words, the Supreme Court realizes that pre-existing regulatory limitations *necessitate* an inquiry into investment-backed expectations.[2] *Id.* at 1027–29, 112 S.Ct. at 2899–900. This inquiry means that a categorical land-use regulation is *not* a taking under *Lucas* if it was in effect when the landowner purchased her land. *See id.*; *see also* Washburn, *Reasonable Investment Backed Expectations*, 49 Wash. U.J. Urb. & Contemp. L. 63, 92–93 (1996); Mandelker, *Investment–Backed Expectations in Takings Law*, 27 Urb. Law. 215, 224–25 (1995); Hageman, *Fifth Amendment Takings Issues*, 9 J. Land Use. & Envt'l. L. 375, 387 (1994).

The concept of investment-backed expectations as a factor in the takings analysis originated in *Penn Central* as part of a discussion to determine when a regulation constitutes a taking. *See* 438 U.S. at 127–28, 98 S.Ct. at 2661 (citing Michelman, *Property, Utility, and Fairness*, 80 Harv. L.Rev. 1165, 1229–1234 (1967)). Michelman posited that the investment-backed expectations analysis looks not to "how much" is taken, but rather at fairness and reliance interests. *See* Michelman, *supra*, at 1231–33. The Supreme Court has since signaled that *notice* of a government regulation can frustrate takings claims by minimizing the weight of investment-backed expectations. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1005–06, 104 S.Ct. 2862, 2874, 81 L.Ed.2d 815 (1984); *see also* Hageman, *supra*, at 388. The *Lucas* Court resurrected the importance of the notice function of the investment-backed expectations inquiry by recognizing that there can be no taking when regulations merely prohibit use that "was always unlawful." *See Lucas*, 505 U.S. at 1030, 112 S.Ct. at 2901 (citing Michelman, *supra*, at 1239–1241).

Indeed, this court has also recognized that the inquiry into investment-backed expectations encompasses a notice function. This court held, in *Good*, that the requirement of investment-backed expectations "limits recovery to owners who can demonstrate that they bought their property in reliance on the non-existence of the challenged regulation." *See* 189 F.3d at 1360 (citing *Creppel v. United States*, 41

---

2. If the investment-backed expectations inquiry is removed from the categorical takings analysis, it could lead to the absurd result where any wetlands purchased by any individual for any purpose (even to maintain them as forever wild) could eventually be "put" back to the public at any time, requiring the government to compensate the original purchaser.

F.3d 627, 632 (Fed.Cir.1994)). Reasonable, investment-backed expectations are an element of every regulatory takings case. *Id.* at 1361 (citing *Loveladies,* 28 F.3d at 1179). "In legal terms, the owner who bought with knowledge of the restraint could be said to have no reliance interest, or to have assumed the risk of any economic loss. In economic terms, it could be said that the market had already discounted for the risk, so that a purchaser could not show a loss in his investment attributable to it." *Id.* (citing *Loveladies,* 28 F.3d at 1177).

If investment-backed expectations were not an essential element in categorical takings claims, speculators who purchased property for a nominal sum, that reflected the impact of anticipated or existing restrictions, could receive windfalls from takings claims. When property is purchased with the expectation that it is or may be subject to regulation, the market has already discounted the possible existence of regulation into the value of the property. Courts must necessarily make the inquiry into investment-backed expectations, because "one who buys with knowledge of a restraint assumes the risk of economic loss." *See Creppel,* 41 F.3d at 632 (citing *Concrete Pipe & Prods., Inc. v. Construction Laborers Pension Trust,* 508 U.S. 602, 645–46, 113 S.Ct. 2264, 2291–92, 124 L.Ed.2d 539 (1993)); *see also Loveladies,* 28 F.3d at 1177.

The reasoning of this panel would allow a developer to purchase property with the full understanding that the property is subject to a regulatory regime, and successfully claim a categorical taking without inquiry into his investment-backed expectations. Indeed, that is *exactly* what has occurred in this case. The Court of Federal Claims ("CFC") explicitly reasoned that "the plaintiffs cannot avoid the fact that they knew any future dredging and filling of wetlands was contingent upon the application of a permit and approval of the same, and knew that the act of applying for permitting does not create an assumption that a permit would be granted." *See Palm Beach Isles Assoc. v. United States,*

42 Fed.Cl. 340, 359 (Fed.Cl.1998) ("CFC Opinion"). In this case, *all* of the owners acquired interest in the submerged property after the enactment and regulatory enforcement of the Rivers and Harbors Act, 33 U.S.C. §§ 401–467 (1994). Indeed, the CFC noted that *all but one* owner acquired interest in the submerged property after the enactment and regulatory enforcement of the Clean Water Act, 33 U.S.C. §§ 1251–1387 (1994).

Today, the *Palm Beach* panel eliminates a critical element from the categorical takings analysis: the inquiry into investment-backed expectations. This reconstruction of takings jurisprudence contradicts holdings of this court and the Supreme Court, and belies the purpose, intent, and necessity of the inquiry into investment-backed expectations in *all* cases.

## II. *Improper Reconstruction of the Facts*

Not only do I disagree with the misinterpretation of the proper legal takings analysis, but I am disturbed by the methodology pursued by the panel in reaching its conclusions. In short, the panel has improperly made its own fact finding in contradiction of the factual findings made by the trial court in this case. This factual metamorphosis creates an illusory categorical taking unsupported by the record. The facts belie any possible finding of a categorical taking. Indeed, the CFC, for two separate and distinct reasons, expressly determined that this case is *not* a categorical taking.

### A. *Partial Taking Due to Relevant Parcel Analysis*

First, the CFC ruled that this case must be analyzed as a *partial* taking because the 50.7 acres at issue should be examined in the context of the initial and entire 311.7 acre parcel of property. *See* 42 Fed.Cl. at 361. The CFC recognized that the property had been purchased in its entirety as a 311.7 acre parcel with 261 acres being sold prior to the owners applying for a permit to develop the remaining 50.7

acres. The trial court reasoned that when the 261 acre parcel was sold, the owners "were aware of the permit process and the need for a permit" to fill the remaining land retained by the owner. *Id.* The trial court understood that "land developed or sold *before* the regulatory environment existed *should not* be included in the denominator." *See id.* (citing *Loveladies*, 28 F.3d at 1181) (emphasis added). Consequently, the CFC determined that the 261 acres of upland property *should* be included in the takings analysis because it was sold *after* the "broader regulatory scheme in accord with the Rivers and Harbors Act" had been imposed upon the owners. *Id.*

Today, the *Palm Beach* panel rejects these factual findings of the CFC. By its magical metamorphosis wand, it states that these findings are "but only one factor to be considered in determining the proper denominator." *See* 208 F.3d at 1381. Instead, the panel incorrectly states that "it is inappropriate to consider [the sale of the 261 acres] to have occurred in the context of the substance of a regulatory structure that was not in place at the relevant times." *Id.* To the contrary—it is undisputed that part of the regulatory structure *was* in place at the relevant time. The panel, by its magically imposed power, reasons that the owners "never planned to develop the parcels as a single unit." *Id.*

Essentially, the panel concludes that the Rivers and Harbors Act did not apply to the upland property because the development of the 261 acres of upland property "was physically and temporally remote from, and legally unconnected to, the 50.7 acres of wetlands and submerged [property]." *Id.* This approach contradicts the clear mandate of the Supreme Court that a unit of property cannot be subdivided for the purpose of takings analysis merely because the regulations apply to one portion of the property. *See Penn Central*, 438 U.S. at 130–31, 98 S.Ct. at 2662. *Penn Central* and its progeny maintain that we should look to the "parcel as a whole" and view the bundle of property rights in its entirety. *See id.* The Supreme Court has recently reaffirmed this proposition. *See*

*Dolan v. City of Tigard*, 512 U.S. 374, 400–01, 114 S.Ct. 2309, 2324–25, 129 L.Ed.2d 304 (1994) ("where an owner possesses a full bundle of property rights, the destruction of one strand of the bundle is not a taking, because the aggregate must be viewed in its entirety"); *Keystone Bituminous Coal Assoc. v. DeBenedictis*, 480 U.S. 470, 497–98, 107 S.Ct. 1232, 1248, 94 L.Ed.2d 472 (1987) (same).

There is no doubt that this court must apply a "flexible approach" when determining the relevant parcel. *See Loveladies*, 28 F.3d at 1181. However, keeping in mind that factors such as contiguity and legal ownership are easily manipulated, this court must "focus on the economic expectations of the claimant with regard to the property." *See Forest Properties, Inc. v. United States*, 177 F.3d 1360, 1365 (Fed. Cir.1999); *see also Lucas*, 505 U.S. at 1066, 112 S.Ct. at 2920 (Stevens, J., dissenting) (anticipating manipulation of the relevant parcel in categorical cases). To do otherwise would impose takings for common land-use controls, setbacks, open-space requirements, and local zoning ordinances.

In this case, it is undisputed that the upland and submerged property was purchased together. Contrary to the statement of the panel, it is also undisputed that the broader regulatory scheme of the Rivers and Harbors Act was enforced *prior* to the sale of the upland property. *See* 42 Fed.Cl. at 361. The CFC noted that the upland property was sold for a considerable profit after the Army Corps of Engineers had already begun to enforce this regulatory scheme. *See id.* It is clear that the entire 311.7 acres constitute the proper "bundle of property rights" to be examined in this case. Instead, the panel employs "conceptual severance" to disregard the 261 acres of upland property, and maintains that the relevant parcel is merely the regulated portion of the property.

The approach used by the *Palm Beach* panel threatens to expose the federal government to enormous demands for windfall compensation awards because submerged

property is often acquired with contiguous upland property. The rule adopted today would allow a developer to (1) purchase upland and submerged property together, (2) develop the upland property and sell it for a profit, (3) subsequently apply for a permit to fill the submerged property, and finally, (4) successfully claim a categorical taking if the permit is denied. Pursuant to the panel's rationale, there would be no consideration of any investment-backed expectations because the submerged property would be taken categorically. The *Palm Beach* panel allows this unfortunate chain of events to unfold by focusing exclusively on the restricted property as the relevant parcel. The panel allows this even though the upland and submerged property were purchased together and were always subject to a broad regulatory scheme. This chain of events is the *very same* situation anticipated by the Supreme Court when it explicitly warned not to "focus on one strand in the property owner's bundle of rights." *See Dolan*, 512 U.S. at 401, 114 S.Ct. at 2324–25; *Keystone Bituminous*, 480 U.S. at 497, 107 S.Ct. at 1248.

### B. *Partial Taking Due to Navigational Servitude*

The panel has also incorrectly pigeonholed this case as a categorical taking by rejecting the trial court's clear finding that the 49.3 acres of property, submerged entirely under as much as *four feet of water*, is subject to the navigational servitude. *See* 42 Fed.Cl. at 354. The trial court determined that "it is clear to this court that the original denial [of the 404 permit] referred to the elimination of 49.3 acres of navigable waters. The subsequent affidavit affirms and clarifies [that the proposed fill] would certainly have a significant adverse effect on navigability." *Id.* In arriving at this determination, the CFC examined the *entirety* of the Army Corps decision records and subsequent evidence. *Id.* at 353–54. The trial court ultimately concluded, based on the undisputed facts before it, that the proposed fill

"would certainly have a significant adverse effect on navigability." *Id.* at 354.

The *Palm Beach* panel has now reconstructed the facts to its liking because it was "unable to determine whether the Government has made a sufficient showing of navigational purpose." *See* 208 F.3d at 1385. The panel has made an appellate determination that navigational purpose is a "disputed" issue, despite the obvious fact that both parties had stipulated to the absence of any genuine issues of fact on cross-motions for summary judgment. *See* 42 Fed.Cl. at 349.

When the CFC granted summary judgment for the government, it was never disputed that one of the reasons for denial of the 404 permit was navigation. Yet, the panel somehow perceives a "contradiction" in the facts because of a single sentence in the Army Corps Memorandum of Decision, which states, "the project should not have a significant adverse impact on navigation." *Id.* at 354. Indeed, the trial court judge examined this single sentence, but nevertheless concluded that other evidence "affirms and clarifies [this] statement" to mean that the proposed fill still "would certainly have a significant adverse affect on navigability." *Id.* at 354.

This court may only review findings of fact by the CFC if they are clearly erroneous. *See Hendler v. United States*, 175 F.3d 1374, 1378 (Fed.Cir.1999). Under this standard, a finding is clearly erroneous, even though there is some supporting evidence in the record, *only* when the reviewing court, based on the entire record, "is left with the definite and firm conviction that a mistake has been committed." *See id.* This standard gives considerable deference to the trial court's factual findings. *Id.* In this case, the *Palm Beach* panel cannot now reconstruct the facts to its liking, especially where each side had stipulated to the absence of disputed facts in cross-motions for summary judgment.

### III. *Holdings of this Court*

There is little doubt that the *Palm Beach* panel has improperly reconstructed

the facts of this case in order to classify it as a categorical taking. The facts of this case are clear. The CFC found as a matter of undisputed fact that the 49.3 acres are subject to the navigational servitude. Furthermore, the CFC properly ruled that the restricted land must be viewed as part of the entire 311.7 acres. Therefore, this case must be analyzed only as a partial taking of 1.4 acres of adjacent wetlands, and must be analyzed under the traditional three-part inquiry of *Penn Central.* *See* 438 U.S. at 124, 98 S.Ct. at 2659. Because the panel has inappropriately metamorphosed this case into a categorical taking, its "holding" is no more than *dicta,* because it is unnecessary to the decision of the case. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 66–67, 116 S.Ct. 1114, 1129, 134 L.Ed.2d 252 (1996).

Conversely, the panel mischaracterizes the precedential value of this court's prior holding in *Good.* This court held in *Good* that "reasonable, investment-backed expectations are an element of every regulatory takings case." *See* 189 F.3d at 1361 (citing *Loveladies,* 28 F.3d at 1179). The *Palm Beach* panel suggests that this statement was mere *dicta* because it was "part of a broad, general discussion about the role of expectations." *See Palm Beach,* Order on Petition for Rehearing at 10. Although the trial court in *Good* did not find a categorical taking, on appeal that court was specifically faced with the issue of whether *Lucas* had "eliminated the requirement for reasonable, investment-backed expectations, at least in cases where the challenged regulation eliminates virtually all of the economic value of the landowner's property." *See* 189 F.3d at 1361. The claimant in *Good* argued that *Lucas* should apply to the facts of his case because "the challenged regulation eliminate[d] virtually all of the economic value" of the property. *Id.*

Because it was necessary to discuss the *Lucas* categorical test in order to show that investment-backed expectations were still relevant, the investment-backed ex-

pectations analysis in *Good* was necessary to the holding of that case. The court in *Good* did not need to manipulate the facts of the trial court in order to characterize the case as a virtual categorical taking. Instead, its holding of no investment-backed expectations was *required* in arriving at its decision. Conversely, the *Palm Beach* holdings are rendered *dicta* by the artful reconstruction of the trial court's own factual findings.

This court has declined to resolve these important legal issues *en banc.* For this reason, I respectfully dissent. By declining to take this matter *en banc,* we may have avoided the delays that such a process entails, because the Supreme Court has indicated its intent in systematizing this area of the law of takings. The Supreme Court has recently granted *certiorari* on a similar case relating to categorical takings. *Palazzolo v. Rhode Island,* — U.S. ——, 121 S.Ct. 296, 148 L.Ed.2d 238 (2000). However, if the Supreme Court finds that the *Palazzolo* case is not the proper vehicle for such a review due to its procedural shortcomings, it should consider this case as a backstop vehicle to clarify the law in this clearly important legal issue in the law of regulatory takings.