Delores **WALCEK, Stanley Walcek, Albert Walcek, and Regina Ammons,** Plaintiffs–Appellants,

v.

**UNITED STATES, Defendant–Appellee.**

No. 01–5108.

United States Court of Appeals, Federal Circuit.

Sept. 11, 2002.

James S. Burling, Pacific Legal Foundation, of Sacramento, CA, argued for plaintiffs-appellants. Of counsel on the brief was Stanley J. Walcek, of Bethany Beach, DE.

John L. Smeltzer, Attorney, Environment and Natural Resources Division, Department of Justice, of Washington, DC, argued for defendant-appellee. With him

on the brief were John C. Cruden, Acting Assistant Attorney General; and Katherine J. Barton, Attorney.

Before SCHALL, BRYSON, and GAJARSA, Circuit Judges.

GAJARSA, Circuit Judge.

The plaintiffs-appellants, Dolores, Stanley, and Albert Walcek, and Regina Ammons (collectively the "Walceks"), appeal a judgment by the United States Court of Federal Claims ("Court of Federal Claims" or "trial court"). The Court of Federal Claims determined that the regulation of the Walceks' real property pursuant to section 404 of the Clean Water Act, 33 U.S.C. § 1344, effected no Fifth Amendment taking. *Walcek v. United States*, 49 Fed. Cl. 248, 249 (Fed.Cl.2001) ("*Walcek II* "). Because the Court of Federal Claims committed no error in its application of the factors set forth in *Penn Central Transportation Company v. City of New York*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), we affirm.

## I. BACKGROUND

The Walceks own 14.5 acres of real property in Bethany Beach, Delaware. They purchased the property in two transactions in 1971, shortly before the passage of the Clean Water Act in 1972. The total purchase price was approximately $117,731. Stanley Walcek testified that the plaintiffs purchased the land in order to develop it, with the intent to supplement their retirement income.

The Walceks failed to investigate the potential physical or regulatory impediments to development of the property prior to purchasing it. The Court of Federal Claims found that:

Before purchasing the Property, neither Mr. Walcek nor any of the other plaintiffs conducted any systematic studies of the Property, regarding such things as soil type, underground springs or other circumstances that might impact on its suitability for development. Nor, prior to the purchase, did any of the plaintiffs contact any engineering or land-use consultants regarding the Property, or attempt to secure any information regarding any existing or impending federal restrictions on the development of the Property.

*Walcek II* at 251–52.

The land was not entirely free from regulation at the time of purchase. First, the town of Bethany Beach zoned the property for residential purposes; each house was required to be built on at least 5,000 square feet. The Court of Federal Claims found that such zoning would permit approximately eight houses per acre. *Id.* at 251. Second, somewhere between 4.5 and 5.2 acres of the property were and are still mapped as wetlands by the State of Delaware. Any filling of this portion of the property would require approval from the State under its Wetland Act, 7 Del. Code Ann. §§ 6601, *et seq.* The parties have stipulated that "there is no reasonable likelihood that such approval would be granted to allow residential development at the subject site" by the State of this portion of the property. *Walcek II* at 251 n. 3. Third, a portion of the parcel falls below the mean high water mark. As such, it was and remains subject to federal regulation under section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 403. This section prohibits construction that impacts navigable waters without approval by the Army Corps of Engineers ("Corps"). In 1968, the Corps began to

exercise "public interest" review that included environmental and conservation concerns in addition to purely navigational impacts. *See, e.g., Zabel v. Tabb,* 430 F.2d 199, 213–14 (5th Cir.1970) (holding that under the Act, the Secretary of the Army may refuse a permit to dredge and fill navigable waters on environmental conservation grounds even though permitting development would not interfere with navigation, flood control, or power production).

In 1972, shortly after the Walceks purchased the property, 13.2 acres of it became subject to regulation under section 404 of the Clean Water Act, 33 U.S.C. § 1344, as federally regulated wetlands. Section 404 required application to the Corps for a permit to fill and develop the protected wetlands. *See* 33 U.S.C. § 1344 (2001). Section 404 also required the Walceks to acquire a Coastal Zone Management Consistency Certification and a section 401 Water Quality Certification from the State of Delaware. Thus, the Walceks needed to obtain all of these permits prior to developing the property.

In early March, 1984, the Walceks entered a contract to sell the land for $1 million to a group of investors led by J. Kiernan (collectively "Kiernan"). The contract was contingent upon Kiernan obtaining all necessary permits for the construction and sale of 60 or more townhouse units. Stanley Walcek testified that he first realized the Property was subject to

wetlands regulation at this time. In response to the Walceks' request that the Corps verify the exact contours of the property's state and federal wetlands, the Corps notified the Walceks that the property included 13.2 acres of federally regulated wetlands, and that, of these acres, approximately 4 to 5 were also state regulated tidal wetlands. By then, the Walceks had released Kiernan from the contract at Kiernan's request.

In September 1987, after trying, unsuccessfully, to have the property zoned for commercial development, the Walceks decided to pursue a border-to-border, 77–lot residential development of the property. Despite receiving the Corps' notification that their property contained regulated wetlands, the Walceks began filling and developing the property without obtaining the required federal and state permits. When the Corps became aware of these activities, it issued a cease and desist order, with which the Walceks eventually complied.

Beginning on February 22, 1988, the Walceks submitted a series of applications for authority to fill and develop the land pursuant to section 404 of the Clean Water Act, 33 U.S.C. § 1344 (1988).[1] These applications sought required approval by the Corps, as well as by the Delaware Department of Natural Resources and Environmental Control ("DNREC"), the body charged with assessing compliance with

---

1. In 1988, the plaintiffs, doing business as "Route 26 Land Development Association," filed suit in the United States District Court for the District of Delaware. The complaint alleged, *inter alia,* that the Corps lacked jurisdiction under the Clean Water Act to regulate the wetlands on their property. *See Route 26 Land Dev. Ass'n v. United States,* 753 F.Supp. 532, 535 & n. 6 (D.Del.1990). The Delaware district court dismissed the suit, holding that it was unripe. *Id.* at 540–42, *aff'd,* 961 F.2d

1568 (3d Cir. Apr.15, 1992) (Table, No. 91–3217). The Walceks later filed a motion to reopen this case based on an allegedly conflicting, intervening Supreme Court decision. The district court denied this motion. *Route 26 Land Dev. Assoc. v. United States,* 182 F.Supp.2d 382, 384 (D.Del.2002) (denying motion to reopen on the grounds that the allegedly intervening Supreme Court decision had no effect on the district court's prior decision).

the Delaware Coastal Zone Management Plan regulations. The Corps denied approval of the Walceks' development plans, as submitted, and proposed alternatives, which the Walceks considered economically unviable.

On May 13, 1994, the Walceks filed the complaint in the present action before the Court of Federal Claims, alleging both a permanent and temporary taking. The complaint alleged a permanent taking based upon the 1993 decision by the Corps denying their permit request without prejudice, which, they alleged, rendered useless the economic value of their property. The complaint also alleged a temporary taking based upon the delay between the Corps' 1986 cease and desist letter and the 1993 permit denial. Finding no evidence of extraordinary delay, and that any delay was due to the "plaintiffs' own failure to complete the permitting process, as well as their strategic decision to initiate this lawsuit, rather than pursuing the permitting process to a final merits determination," the Court of Federal Claims granted the government's motion for summary judgment that no temporary taking had occurred. *Walcek v. United States*, 44 Fed. Cl. 462, 467–68 (Fed.Cl.1999) (*"Walcek I "*). On appeal, the Walceks do not challenge the Court of Federal Claims' judgment regarding the absence of a temporary taking.

After the Walceks filed their complaint in the Court of Federal Claims, the Corps, on November 4, 1996, issued a permit to the plaintiffs. The permit authorized some development, but less development than the Walceks had requested. It authorized a 28–lot residential development, consisting of two cul-de-sacs. The permit allowed the filling of up to 2.2 acres of wetlands on the property, conditioned upon mitigation by creating or restoring 4.4 acres of other wetlands.

On the government's motion for summary judgment, the Court of Federal Claims held that the 1993 permit denial did not effectuate a taking as a matter of law. *See Walcek II* at 255. Because the denial was without prejudice, it did not constitute a reviewable decision. *Id.* at 255 n. 13. The court noted, however, that the Corps' decision to issue a limited permit in 1996 *was* a reviewable final determination. *Id.* The court found that there were genuine issues of material fact regarding the 1996 permit, and therefore denied summary judgment to either party. *Walcek I* at 466–67.

The Court of Federal Claims then held a trial, which was limited to the issue of whether the 1996 permit effected a regulatory taking. Although the Walceks never formally amended the complaint to allege that the Corps' issuance of the 1996 limited development permit effected a regulatory taking, the Court of Federal Claims stated that this issue "was tried by the implied consent of the parties and thus shall be treated, in all respects, as if it had been raised in the pleadings." *Walcek II* at 255 n. 14 (citing R. Ct. Fed. Cl. 15(b)).

Before the Court of Federal Claims, the Walceks did not argue that the relevant parcel for the takings analysis was the 11 acres of wetlands that the 1996 permit required the plaintiffs to leave undeveloped (13.2 acres of federal wetlands minus 2.2 acres permitted to be developed). Instead, they argued that the 13.2 acres of wetlands on the property constituted the relevant parcel. Because the permit allowed development of 2.2 acres of the wetlands, the trial court held that no categorical taking occurred; the permit did not deny "all economically beneficial or pro-

ductive use of land." *See Walcek II* at 258 (quoting *Lucas v. S.C. Coastal Council,* 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)).

After determining that no categorical taking occurred, the Court of Federal Claims noted, properly, that absent a categorical taking, a property owner may nevertheless be able to prove that the regulation effected a taking pursuant to the factors articulated in *Penn Central.*[2] *Id.* (citing 438 U.S. at 124, 98 S.Ct. 2646). After extensively analyzing these factors, the court concluded that the application of wetlands regulations via the 1996 permit effected no compensable taking. Rather, it caused merely a noncompensable diminution in value, which allowed "the plaintiffs to realize to a not insignificant degree," their reasonable expectations in the development of the property. The court entered judgment dismissing the complaint on April 5, 2001.

The Walceks appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

■ Determining whether a particular regulatory action constitutes a taking involves an *ad hoc,* fact-intensive inquiry. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 720, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). It is a question of law based on factual underpinnings. *Wyatt v. United States,* 271 F.3d 1090, 1096 (Fed.Cir.2001), *cert. denied,* —— U.S. ——, 122 S.Ct. 1960, 152 L.Ed.2d 1021 (2002).

This court reviews the Court of Federal Claims' legal determinations completely and independently, and examines its factual findings for clear error. *Id.* The trial court's determination of the relevant parcel for purposes of regulatory takings analysis is one such fact, reviewed for clear error. *See Forest Properties, Inc. v. United States,* 177 F.3d 1360, 1366 (Fed.Cir. 1999) (holding that the trial court did not commit clear error in determining the relevant parcel) (citing *Loveladies Harbor, Inc. v. United States,* 28 F.3d 1171, 1181 (Fed.Cir.1994) (reviewing the relevant parcel determination for clear error)).

## III. DISCUSSION

On appeal, the Walceks contend that two errors require this court to reverse and remand the judgment of the Court of Federal Claims. First, according to the Walceks, the Supreme Court's decision in *Palazzolo v. Rhode Island,* 533 U.S. 606, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001), provides grounds for treating the 11 acres of wetlands on which the 1996 permit prohibited development as the relevant parcel for the takings analysis. Because that permit denied the Walceks all economically viable use of these 11 acres, they submit that it constitutes a categorical taking under *Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). Second, even if the 1996 permit did not constitute a categorical taking pursuant to *Lucas,* the Walceks contend that the Court of Federal Claims improperly applied the *Penn Central* factors, and therefore erroneously concluded that the permit did not effect a taking.

---

**2.** The *Penn Central* factors are: 1) the regulation's economic effect on the landowner; 2) the extent to which the regulation interferes with reasonable, investment-backed expectations, and 3) the character of the government action. *Palazzolo v. Rhode Island,* 533 U.S. 606, 617, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (citing *Penn Cent.,* 438 U.S. at 124, 98 S.Ct. 2646).

■ We decline to consider the Walceks' argument that the relevant parcel for takings analysis is the 11 acres of wetlands that the 1996 permit required them to leave undeveloped. Before the Court of Federal Claims, the Walceks contended that the relevant parcel consisted of the 13.2 acres of wetlands on the property. They failed to raise the 11–acre argument below. We ordinarily refuse to consider arguments levied for the first time on appeal. *See Forshey v. Principi,* 284 F.3d 1335, 1355–59 (Fed.Cir.2002) (en banc) (discussing discretionary exceptions to this general rule, but declining to apply them to issues that had not been raised below).

No Supreme Court precedent alters this result. Although the Walceks contend that the intervening Supreme Court decision in *Palazzolo* provided new grounds for determining the relevant parcel, *Palazzolo* provides no support for this contention. In *Palazzolo,* the petitioner argued for the first time before the Supreme Court that the wetlands portion of his property constituted the relevant parcel, and that therefore the government regulation applicable to his land had effected a categorical taking under *Lucas.* 533 U.S. at 631, 121 S.Ct. 2448. The court noted that it had "at times expressed discomfort with the logic" of the rule that regulatory takings analysis measures the extent of deprivation against the parcel as a whole. *Id.* It also noted that some commentators had echoed that sentiment. *Id.* These are the statements on which the Walceks rely to demonstrate that the Court departed from the parcel as a whole approach. In actuality, the Court declined to reach the issue because the petitioner failed to raise these arguments in proceedings prior to the appeal. *Id.* at 631–32, 121 S.Ct. 2448. It wrote:

Whatever the merits of these criticisms, we will not explore the point here. Peti-

tioner did not press the argument in the state courts, and the issue was not presented in the petition for certiorari.

*Id.*

■ The Walceks are similarly situated. Because they failed to argue to the Court of Federal Claims that the 11 acres of wetlands on which no development was permitted constituted the relevant parcel, we will not consider that argument on appeal. The Walceks argued to the Court of Federal Claims that the entire 13.2–acre wetland portion of their property constituted the relevant parcel. The permit allowed development on 2.2 acres of that property. The Court of Federal Claims properly determined that the Walceks were not totally deprived of all economically viable use of their land, and that, therefore, no categorical taking occurred.

We also find no error in the Court of Federal Claims' analysis of the *Penn Central* factors and in its conclusion that, under those factors, the Walceks suffered no taking. In particular, the Walceks challenge two major aspects of the Court of Federal Claims' *Penn Central* analysis. First, they argue that the court improperly determined that the relevant parcel consisted of their entire 14.5–acre parcel rather than the 13.2 acres of wetlands. Second, the Walceks argue that the court improperly determined that they would be able to generate a profit if they developed the land in accordance with the 1996 permit, because the court failed to adjust the value of the property for inflation. According to the Walceks, this failure led the court to determine, erroneously, that the Walceks would generate a profit of $305,000 rather than incurring a $93,000 loss. These arguments lack merit.

The Court of Federal Claims properly analyzed the permit's impact with respect

to the value of the entire 14.5–acre parcel. The Supreme Court recently reaffirmed that in regulatory takings analysis, the relevant parcel is the parcel as a whole. *Tahoe–Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency,* —— U.S. ——, ————–——, 122 S.Ct. 1465, 1481–84, 152 L.Ed.2d 517 (2002). In *Tahoe–Sierra,* the petitioner sought the application of the categorical taking rule adopted in *Lucas* for permanent takings to a temporary taking, which it alleged had amounted to a temporary deprivation of all economically viable land use. *Id.* at 1483. The Supreme Court declined to temporally parse the relevant parcel. *Id.* Instead, the Court reaffirmed that regulatory takings analysis properly analyzes the impact of the challenged regulation on the land owner's entire parcel. The Court explained:

> Certainly, our holding that the permanent "obliteration of the value" of a fee simple estate constitutes a categorical taking does not answer the question whether a regulation prohibiting any economic use of land for a 32–month period has the same legal effect. Petitioners seek to bring this case under the rule announced in *Lucas* by arguing that we can effectively sever a 32–month segment from the remainder of each landowner's fee simple estate, and then ask whether that segment has been taken in its entirety by the moratoria. Of course, defining the property interest taken in terms of the very regulation being challenged is circular. With property so divided, every delay would become a total ban; the moratorium and the normal permit process alike would constitute categorical takings. Petitioners' "conceptual severance" argument is unavailing because it ignores *Penn Central's* admonition that in regulatory takings cases we must focus on "the parcel as a whole."

*Id.* (citing *Penn Cent.,* 438 U.S. at 130–31, 98 S.Ct. 2646).

■■■■■ This court has held that the impact of a challenged regulation must be evaluated in terms of its effect on the landowner's "parcel as a whole" in the context of wetlands regulation. *See, e.g., Tabb Lakes, Ltd. v. United States,* 10 F.3d 796, 802 (Fed.Cir.1993) (holding that "the quantum of land to be considered is not each *individual* lot containing wetlands or even the combined area of wetlands," but rather, the parcel as a whole). Particularly in light of the Supreme Court's reaffirmation of the "parcel as a whole" approach in *Tahoe–Sierra,* the Court of Federal Claims committed no error in determining that the relevant parcel consisted of the Walceks' entire 14.5–acres.

■■■■■ The Court of Federal Claims also committed no error in declining to adjust the value of the property for inflation before determining whether the permitted development would allow the Walceks to realize a profit. The determination of the fair market value of property allegedly taken inherently factors in the impact of inflation, whether the alleged taking is physical or regulatory. The market forces that affect the value of property over time allow for periods of inflation and for periods of deflation. Therefore we should allow those forces to make the determination by relying upon the fair market value of the property at the time of the alleged taking rather than attempting to increase or decrease the base value by reference to any consumer price index. Attempting to make additional adjustments for inflation or deflation would require the sagacity of Solomon and the wizardry of Merlin.

The Court of Federal Claims therefore properly declined to introduce the "pletho-

ra of uncertainties and complexities" the inflationary adjustment would entail. *Walcek II* at 266. Moreover, as the court noted, no investment is guaranteed a return that will keep pace with inflation. The trial court determined that the 1996 permit allows the Walceks to recover their initial expenditure and realize a return of $305,000 on their investment. One paying taxes on capital gains is not permitted to adjust downwardly her profit based on whether her investment generated a return that kept pace with inflation, and it would be equally improper to make such a downward adjustment in the context of a regulatory takings inquiry. The Court of Federal Claims committed no error in this respect.

## IV. CONCLUSION

We have considered the Walceks' remaining arguments and find them to lack merit. Because the Court of Federal Claims properly analyzed the factors articulated in *Penn Central* in determining that the Walceks suffered no taking as a result of the 1996 permit, the dismissal of the complaint is affirmed.

*AFFIRMED.*