CANE TENNESSEE, INC. and
Colten, Inc., Plaintiffs,

v.

UNITED STATES, Defendant.

Cane Tennessee, Inc. and Colten,
Inc., Plaintiffs,

v.

United States, Defendant.

Mary Anne Wyatt, Nancy Wyatt Zorn, and Wilson W. Wyatt, Jr., Both Individually and as a Trustee for the 1973 Irrevocable Trust for the Primary Benefit of Mary Anne Wyatt, and the 1973 Irrevocable Trust for the Primary Benefit of Wilson W. Wyatt, Jr., and Regions Morgan Keegan Trust, F.S.B. as Trustee for the 1973 Irrevocable Trust for the Primary Benefit of Nancy Wyatt Zorn, Plaintiffs,

v.

The United States, Defendant.

Nos. 96–237 L, 00–513 L, 02–945 L.

United States Court of Federal Claims.

Oct. 29, 2004.

Matthew D. Slater, Washington, DC, for plaintiffs.

Kristine S. Tardiff, Environment & Natural Resources Division, United States Department of Justice, Concord, NH, for defendant. Daniel W. Kilduff, Office of the Solicitor, United States Department of the Interior, Washington, DC, of counsel.

## OPINION

HEWITT, Judge.

Before the court is Defendant's Motion for Reconsideration of the Court's Decision of May 28, 2004 (Def.'s Recons. Mot.).[1] Pursuant to Rule 59 of the Court of Federal Claims, defendant seeks reconsideration of the court's determination: (1) "that the relevant parcel as a whole for the Wyatt [plain-

---

1. That decision is cited as *Cane Tennessee, Inc. v. United States (Cane V)*, 60 Fed.Cl. 694 (2004).

tiffs][2] should exclude their oil and gas interests in the subject property" and (2) that the Wyatt plaintiffs' "reasonable investment-backed expectations are not a factor in determining liability for a [categorical] regulatory taking of the Wyatts' property." Def.'s Recons. Mot. at 1. For the following reasons, defendant's motion is DENIED.[3] The court takes the opportunity afforded by defendant's motion to correct a factual misstatement in its analysis of the parcel as a whole rule. The correction does not alter the court's conclusion.

## I. Standard for Reconsideration under RCFC 59

Rule 59(a) of the Court of Federal Claims (RCFC) affords this court the discretion to grant reconsideration "to all or any of the parties and on all or part of the issues, for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a); *see Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed.Cir.1990) ("The decision whether to grant reconsideration lies largely within the discretion of the [trial] court.").

■ A motion for reconsideration should be considered with "exceptional care." *Carter v. United States*, 207 Ct.Cl. 316, 518 F.2d 1199, 1199 (1975). The motion " 'must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court.' " *Bishop v. United States*, 26 Cl.Ct. 281, 286 (1992) (quoting *Circle K Corp. v. United States*, 23 Cl.Ct. 659, 664 (1991)). A motion for reconsideration "enables a trial court to address oversights, and the court appreciates the opportunity to do so." *Fru-Con Constr. Corp. v. United States*, 44 Fed.

Cl. 298, 315 (1999), *aff'd*, 250 F.3d 762 (Fed. Cir.2000).

## II. The Relevant Parcel Determination

In *Cane V*, the court identified the property interests at issue as "non-participating royalty interests in ... coal." 60 Fed.Cl. at 698. Although the court recognized that "[t]he Wyatts also own oil and gas rights ... given to them by [their parents] the Senior Wyatts in 1968, 1975 and 1976, in various properties in Tennessee, including the tracts at issue in this case," the court noted defendant's concession in its summary judgment briefing that the Wyatts' oil and gas interests "were valueless 'during the later time periods at issue in this case,' " *id.* n. 6 (citation omitted), and concluded that "the[ ] [oil and gas] interests are irrelevant to the takings analysis," *id.*

The court found the relevant parcel determination with respect to the Wyatts to be "relatively straightforward." *Cane V*, 60 Fed.Cl. at 702. The court reasoned:

> [Because] [t]he Wyatts [had] received undivided one-third interests in 3.5 % coal royalty interests in 1991 in the Main Tract and the Pilot Knob Tract [and such] royalty interest of the Wyatts was not contiguous to any other property of the Wyatts, ... was not acquired by the Wyatts with other property, ... and was not part of a common development scheme of the Wyatts for coal development, ... the relevant parcel for the Wyatts is the undivided 3.5 % non-participating coal royalty interest acquired in 1991.

*Id.* (internal citations omitted).

Defendant contends that the court erroneously limited the relevant parcel to just one strand in the Wyatts' bundle of rights associ-

---

**2.** Mary Anne Wyatt, Nancy Wyatt Zorn, and Wilson W. Wyatt, Jr. are the three children of Wilson W. Wyatt, Sr. and Anne D. Wyatt (the Senior Wyatts). *See Cane V*, 60 Fed.Cl. at 696. The three Wyatt children who have filed suit in their individual capacities are referred to in this opinion as "the Wyatts."

**3.** The facts contained in this section and in this opinion are only those pertinent to the relevant parcel and taking issues raised in the briefs. Facts cited to the pleadings of only one party do

not appear to be in dispute. Additional facts in this matter can be found at *Wyatt v. United States*, 271 F.3d 1090 (Fed.Cir.2001) (*Wyatt*), rev'g *Eastern Minerals International, Inc. v. United States* (*Eastern Minerals*), 36 Fed.Cl. 541 (1996), as well as in this court's earlier opinions in *Cane Tennessee, Inc. v. United States* (*Cane I*), *Cane Tennessee, Inc. v. United States* (*Cane II*), and *Cane Tennessee, Inc. v. United States* (*Cane III*), reported at 44 Fed.Cl. 785 (1999), 54 Fed.Cl. 100 (2002), and 57 Fed.Cl. 115 (2003).

ated with the Main Tract and the Pilot Knob Tract. Def.'s Recons. Mot. at 5–6; Defendant's Reply in Support of Its Motion for Reconsideration of the Court's Decision of May 28, 2004 (Def.'s Reply) at 4–6. Because the Wyatts' bundle of rights associated with the Main Tract and the Pilot Knob Tract includes two strands of ownership—the non-participating 3.5% coal royalty interest and oil and gas rights, Def.'s Recons. Mot. at 5—defendant argues that, by failing to include the Wyatts' oil and gas rights in the Main Tract and the Pilot Knob Tract as part of the relevant parcel, the court's determination is "contrary to the parcel as a whole rule," is "inconsistent with the Court's prior ruling on the parcel as a whole issue . . . and [is] internally inconsistent with other determinations made in the . . . Opinion at issue in this motion." *Id.* at 2.

Defendant asserts that, although it "conceded that the Wyatts' oil and gas interests in the Main Tract and the Pilot Knob Tract had no market value as of June 2000 (the alleged date of taking), . . . [it] did not concede that the oil and gas interests were irrelevant to the takings analysis." *Id.* at 9 (citations omitted). Rather, defendant urges, "the fact that the Wyatts have derived some income from their oil and gas interests notwithstanding the regulatory action at issue is highly relevant to the takings analysis." *Id.*

In arguing for the inclusion of the Wyatts' oil and gas interests in the court's relevant parcel determination, defendant asserts that the Wyatts' oil and gas interests are indisputably contiguous to their coal royalty interest because "the Wyatts own the oil and gas interests *in the same property* in which they own a coal royalty interest." Def.'s Recons. Mot. at 6. Defendant contends that the lack of a " 'common development scheme' " for the Wyatts' coal royalty interest and their oil and gas interests does not support the court's conclusion that a property owner "may segment its ownership interests [in the same parcels of property] into separate relevant parcels for the purposes of pursuing a takings claim." *Id.* Rather, defendant argues, a party's economic expectations merely inform the court's decision to treat legally separate parcels of land as a single relevant parcel in

a regulatory takings analysis. *See* Def.'s Reply at 5 (citing *Forest Properties, Inc. v. United States,* 177 F.3d 1360, 1365 (Fed.Cir.), *cert. denied,* 528 U.S. 951, 120 S.Ct. 373, 145 L.Ed.2d 291 (1999)).

The court found that the record in this case indicates that the Wyatts acquired their property interests, specifically their oil and gas interests and their non-participating 3.5% coal royalty interest, in the Main Tract and the Pilot Knob Tract through several donative conveyances from their parents, the Senior Wyatts, at different times. *Cane V,* 60 Fed.Cl. at 700–01. The Wyatts acquired their oil and gas interests in various properties in Tennessee, including the Main Tract and the Pilot Knob Tract at issue here, in 1968, 1975 and 1976. *Id.* at 698 n. 6. In 1991, nearly fifteen years later, the Wyatts acquired their undivided 3.5 % non-participating coal royalty interest in the Main Tract and in the Pilot Knob Tract. *Id.* at 702. Although the Wyatts' property interests do lie in the same parcels of property, specifically in the Main Tract and in the Pilot Knob Tract, the coal royalty interest and the oil and gas interests were not acquired together and were not acquired as part of a common development scheme. *Id.* The sole source of the Wyatts' economic expectations with respect to the property is their coal royalty interest in the Main Tract and in the Pilot Knob Tract because, as even defendant has conceded, the Wyatts' oil and gas interests in the Main Tract and in the Pilot Knob Tract were valueless at the time of the alleged taking. *See id.* at 698 n. 6 (finding the oil and gas rights to be "irrelevant to the takings analysis"). After finding the Wyatts' oil and gas rights irrelevant to the takings claim, *id.,* the court stated in its opinion of May 28, 2004 that "[t]h[e] [coal] royalty interest of the Wyatts *was not contiguous* to any other property of the Wyatts." *Id.* at 702 (emphasis added).

The court agrees with defendant that "the exclusion of the Wyatts' oil and gas interests [from the court's relevant parcel determination] cannot be based on a lack of . . . contiguity." Def.'s Recons. Mot. at 6. Because they are located in the same parcel of property, the Wyatts' oil and gas rights are in

fact contiguous to or overlying the Wyatts' coal royalty interests. While the court's correction of this factual misstatement modifies the court's articulation of its relevant parcel determination, it does not alter the court's conclusion. For the following reasons, the contiguity or overlying nature of the Wyatts' property interests, without more, does not compel inclusion in the relevant parcel of both the Wyatts' allegedly valuable coal royalty interest and their admittedly valueless oil and gas interests.

Defendant argues that the Supreme Court's decision in *Tahoe–Sierra Preservation Council v. Tahoe Regional Planning Agency*, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) makes clear that

> a parcel of land cannot be segmented into different interests, whether those interests are physical (such as the support estate in *Keystone*)[4], functional (such as the denial of one particular use in *Andrus v. Allard*)[5] or temporal (such as the tempo-

rary deprivation of all use of a parcel of property in *Tahoe*).[6]

Def.'s Reply at 5 (citing *Tahoe–Sierra*, 535 U.S. at 325–32, 122 S.Ct. 1465)(footnotes added). Defendant also suggests in its Motion for Leave to File Citation to Supplemental Authority that the Federal Circuit's recent decision in *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338 (Fed.Cir.2004), supports its position. Defendant reasons that in *Appolo Fuels*, the Federal Circuit affirms that "the relevant parcel as a whole in [permanent regulatory takings] cases cannot be limited to just that portion of a plaintiff's property that is impacted by [government regulation]." Defendant's Motion for Leave to File Citation to Supplemental Authority (Def.'s Supp'l Authority Mot.) at 5.

Plaintiffs here, the Wyatt children, argue that the relevant parcel determination "is a question of fact, not an issue of law." The Wyatt Children's Opposition to the Government's Motion for Reconsideration (Pls.' Opp'n) at 4 (citing *Walcek v. United States*,

4. In *Keystone Bituminous Coal Association v. De-Benedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987), the Supreme Court determined that the Subsidence Act, which provided for the conservation of surface land areas, *id.* at 487, 107 S.Ct. 1232, did not effect a taking of the property of petitioner coal companies because petitioners failed to prove that they had been denied the economically viable use of the property, *id.* at 499, 107 S.Ct. 1232. The Court observed that "[t]he record indicate[d] that only about 75% of petitioners' underground coal [could] be profitably mined in any event" and that petitioners' reasonable investment-backed expectations were not "materially affected by the additional duty to retain the small percentage that must be used to support the structures" protected by the challenged provision of Pennsylvania property law. *Id.*

5. In *Andrus v. Allard*, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), the Supreme Court found that two conservation statutes, specifically, the Eagle Protection Act and the Migratory Bird Treaty Act, which were intended "to prevent the destruction of certain species of birds," *id.* at 52–53, 100 S.Ct. 318, applied to prohibit the commercial sale of artifacts composed of feathers from protected birds, *id.* at 63, 100 S.Ct. 318. The Supreme Court determined, however, that no taking had been effected because the challenged regulations "d[id] not compel the surrender of the artifacts" nor impose a physical invasion upon them. *Id.* at 65, 100 S.Ct. 318. Rather, by proscribing the sale of the artifacts, the regulations restricted one means of disposing

of complainants' property. *Id.* While recognizing that the regulations prevented the most profitable use of the complainants' property, the court declined to find a taking because it was not clear that no economic benefit could be derived from the artifacts through, for example, an exhibition of the artifacts for an admissions fee. *Id.* at 66, 100 S.Ct. 318.

6. In *Tahoe–Sierra*, the Supreme Court affirmed the decision of the Ninth Circuit Court of Appeals finding that the temporary moratorium imposed by the Tahoe Regional Planning Agency on "virtually all development on a substantial portion of the property subject to [the Agency's] jurisdiction" while the Agency developed a "comprehensive land-use plan" did not effect a taking under the *Penn Central* factors. 535 U.S. at 306, 319–20, 122 S.Ct. 1465. The Supreme Court rejected the petitioner's argument that a temporary deprivation of all economically viable use compels a finding that a categorical taking has occurred. *Id.* at 320, 122 S.Ct. 1465. Applying the parcel as a whole rule, the Court stated:

> An interest in real property is defined by the metes and bounds that describe its geographic dimensions and the term of years that describes the temporal aspect of the owner's interest.... Logically, a fee simple estate cannot be rendered valueless by a temporary prohibition on economic use, because the property will recover value as soon as the prohibition is lifted.

*Id.* at 331–32, 122 S.Ct. 1465 (citation omitted).

303 F.3d 1349, 1354 (Fed.Cir.2002) (stating that "[t]he trial court's determination of the relevant parcel for purposes of regulatory takings analysis is [a factual finding], reviewed for clear error")). Plaintiffs assert that the factual record

> establishes that the Wyatt Children's oil and gas interests were acquired in wholly separate transactions ending in 1976, and that the Wyatt Children have never treated these interests as part of a common development scheme with their later-acquired coal interests [but rather] . . . leased [the oil and gas interests] in common with[ ] the oil and gas interests on many other unrelated tracts[.]

*Id.* at 4. Plaintiffs add that the record is clear that " 'there are no known commercial reserves of oil or gas' " in the Main Tract and in the Pilot Knob Tract, that " 'there is no reasonable expectation' " of finding such reserves, and that their oil and gas interests in the Main Tract and in the Pilot Knob Tract " 'have and have had no market value.' " *Id.* at 5 (quoting Pls.' Ex. 53 at 1378–80 (Oil and Gas Appraisal Opinion by John T. Boyd Company, Jan. 17, 2003)). Plaintiffs contend that, notwithstanding defendant's speculative factual contentions on reconsideration, *see* Def.'s Recons. Mot. at 10 n. 5, the court's relevant parcel determination properly excluded the Wyatts' oil and gas interests because those interests "would add zero value to both the numerator and the denominator" of the relevant parcel analysis. *Id.* at 6.

In its motion for reconsideration, defendant made several factual contentions. Defendant states that in 1994, the Wyatts sold their oil and gas rights together with their fee ownership interest in the 115–acre Penitentiary Gulf Tract to Patillo Construction. Def.'s Recons. Mot. at 10 n. 5. Defendant speculates that "[a]lthough the Wyatts have not leased their oil and gas rights since 1986, . . . [t]his more recent activity shows that the Wyatts' oil and gas rights may have some value to a purchaser of the fee interest in the land subject to these oil and gas rights." *Id.* Plaintiffs explain, however, that they "conveyed their oil and gas interests [merely] as an accommodation to the purchaser, who wished to clear up the title, not because the

interest had value for which the purchaser was willing to pay." Pls.' Opp'n at 6; Appendix to the Wyatt Children's Opposition to the Government's Motion for Reconsideration (Pls.' App.) at 1684 (Declaration of Real Estate Broker Handling the Transaction between the Wyatts and Patillo Construction Company). Plaintiffs point to a "roughly contemporaneous [real estate] sale [in 1994] of the [approximately 101–acre] Corner Point Tract to [purchaser] Coy Guy," Pls.' Opp'n at 6, that did not include the conveyance of the Wyatts' oil and gas rights-"even to clean up title"—because they were "viewed as worthless," Pls.' App. at 1685 (Declaration of Real Estate Broker Handling the Transaction between the Wyatts and Mr. Guy). Most importantly, defendant has already conceded that the interests were valueless at the time of the taking. *See Cane V,* 60 Fed.Cl. at 698 n. 6. Defendant's speculative contention that the oil and gas interests may have some value is not supported by the evidentiary record here.

Plaintiffs argue that the facts in *Appolo Fuels* are distinguishable from the facts here because, in *Appolo Fuels,* "the plaintiff sought to limit the relevant parcel to something less than the entirety of the property interests it had acquired as part of a unified mining plan." Pls.' Opp'n at 8 n. 3 (citing *Appolo Fuels,* 381 F.3d at 1346). Plaintiffs point out that the plaintiff in *Appolo Fuels* argued specifically for the limitation of the relevant parcel to just the portions of its mining leases that were affected by the unsuitability determination, *id.,* and that the Federal Circuit affirmed the trial court's rejection of that argument as an impermissible effort to " 'defin[e] the property interest in terms of the very regulation challenged.' " *Id.* (quoting *Appolo Fuels,* 381 F.3d at 1346 (internal quotations omitted)) Plaintiffs assert that they have not sought to limit the relevant parcel in this case to the portion alleged to have been taken, but rather have sought not to lump "disparate parcels . . . together artificially." *Id.* at 8.

■ The Supreme Court instructs that the determination of whether a regulatory taking has occurred requires a comparison of "the value that has been taken from property with

the value that remains in the property." *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 497, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987). To make this comparison and properly assess the economic impact of the regulation at issue, a court must first determine what is the relevant parcel of property for the takings analysis. *Forest Properties,* 177 F.3d at 1364; *see also Concrete Pipe and Prods. of Cal., Inc. v. Constr. Laborers Pension Trust for S. Cal.,* 508 U.S. 602, 644, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993) (observing that "[t]o the extent that any portion of property is taken, that portion is always taken in its entirety; the relevant question, however, is whether the property taken is all, or only a portion of, the parcel in question").

As this court observed in *Cane II,* "*Penn Central [Transportation Company v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)], unambiguously requires*" that, when identifying the relevant parcel in regulatory takings cases, "the tribunal must focus on 'the parcel as a whole.' "

> "Taking" jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated. In deciding whether a particular governmental action has effected a taking, this Court focuses rather both on the character of the action and on the nature and extent of the interference with rights in the parcel as a whole . . . .

54 Fed.Cl. at 105 (quoting *Penn Central,* 438 U.S. at 130–31, 98 S.Ct. 2646); *accord Tahoe–Sierra,* 535 U.S. at 327, 122 S.Ct. 1465 (stating that "*Penn Central* did . . . make it clear that even though multiple factors are relevant in the analysis of regulatory takings claims, in such cases we must focus on 'the parcel as a whole' "); *Walcek,* 303 F.3d at 1356 (stating that in the *Tahoe–Sierra* decision "[t]he Supreme Court recently reaffirmed that in regulatory takings analysis, the relevant parcel is the parcel as a whole"). In determining the "appropriate" parcel as a whole, the court must "look beyond the regulated portion of the property." *Appolo Fuels, Inc. v. United States,* 54 Fed.Cl. 717, 725 (2002), *aff'd,* 381 F.3d 1338 (Fed.Cir.2004).

In applying the "parcel as a whole" rule, not only must the court "look beyond the regulated portion of the property," *id.,* the court must also focus on "the economic expectations of the claimant" with respect to the property. *Forest Properties,* 177 F.3d at 1365; *Cane V,* 60 Fed.Cl. at 699–700 (citing *Forest Properties,* 177 F.3d at 1365). Additional relevant factual considerations in making the "parcel as a whole" determination include: (1) the degree of contiguity between property interests; (2) the dates of acquisition of property interests; (3) the extent to which a parcel has been treated as a single unit, and (4) the extent to which the regulated lands enhance the value of the remaining lands. *Ciampitti v. United States,* 22 Cl.Ct. 310, 318 (1991) (stating that the listed factual considerations are relevant to the parcel as a whole analysis); *see also Appolo Fuels, Inc.,* 381 F.3d at 1346 (finding that the " 'profitable reserves' " in two separate surface mining leases acquired nearly six years apart " 'were the focus of [plaintiff's] expectations' " and, as part of one unified mining plan, were part of the relevant parcel); *Forest Properties,* 177 F.3d at 1365 (separate parcels viewed as a single economic unit may constitute the relevant parcel); *Cane V,* 60 Fed.Cl. at 700 (quoting *Ciampitti,* 22 Cl.Ct. at 318).

In this action, the Wyatts allege that the decision by the Secretary of the Interior on June 17, 2000 designating portions of their property as unsuitable for surface mining effected a taking of their property. *Cane V,* 60 Fed.Cl. at 696. In making the relevant parcel determination for the takings analysis here, the court examined the economic expectations of the plaintiffs, specifically considering the degree of contiguity between the Wyatts' property interests, the acquisition dates of their property interests; the extent to which the property interests have been treated as a single unit, and the extent to which the regulated property interest enhances the value of the remaining property interests. *Id.* at 699–700. All of those factors supported the court's determination that plaintiffs' non-participating coal royalty interests comprised the relevant parcel. *Id.* at 702. That determination is not altered by

the contiguity of valueless oil and gas interests. Nor does the court believe that the authorities on which both the court and the parties rely require the inclusion of valueless oil and gas interests in the relevant parcel.

In *Penn Central,* the plaintiff property owners, Penn Central Transportation Company and its affiliates, asserted that the application of New York City's Landmarks Preservation Law to Grand Central Terminal in midtown Manhattan effected a Fifth Amendment taking.[7]  438 U.S. at 107, 98 S.Ct. 2646.  The *Penn Central* plaintiffs did not dispute that the "parcel of land occupied by Grand Central Terminal [was] ... capable of earning a reasonable return, and that the transferable development rights afforded ... by virtue of the Terminal's designation as a landmark [we]re valuable, even if not as valuable as the rights to construct above the Terminal." *Id.* at 129, 98 S.Ct. 2646 (footnote omitted).  Yet the *Penn Central* plaintiffs claimed that the Landmarks Law "deprived them of any gainful use of their 'air rights' above ... [Grand Central] Terminal and that, irrespective of the value of the remainder of their parcel," they were "entitl[ed] ... to 'just compensation' measured by the fair market value of these air rights." *Id.* at 130, 98 S.Ct. 2646.  Rejecting plaintiffs' argument, the Supreme Court stated that, in addition to the character of the governmental action, it "focuses ... on the nature and extent of the interference with rights in the parcel as a whole." *Id.* at 130–31, 98 S.Ct. 2646.  There, the Supreme Court observed that each of the property owner's rights in the particular parcel were valuable and considered all of the property owner' rights in that particular parcel in the takings analysis.

The court also relies on the subsequent guidance in case law in which the relevant parcel contains the property interests supporting the entirety of the property owner's economic expectations.  In *Appolo Fuels v. United States,* the trial court stated that "[c]ourts have been willing to designate the area subject to government regulation as the appropriate denominator if the area contains

the whole of a claimant's viable economic interests."  54 Fed.Cl. 717, 727 (Fed.Cl.2002) (citing *Loveladies Harbor, Inc. v. United States,* 28 F.3d 1171, 1181 (Fed.Cir.1994); *Whitney Benefits, Inc. v. United States,* 926 F.2d 1169, 1172 (Fed.Cir.1991); *Florida Rock Indus., Inc. v. United States,* 791 F.2d 893, 904 (Fed.Cir.1986)).  In *Loveladies Harbor,* the Federal Circuit affirmed the trial court's relevant parcel determination noting that "[t]he relevant parcel ... coincided with the area covered by the [mining] permit only because the remainder of plaintiff's property was either developed before the imposition of the federal regulatory scheme or was required by the state to remain undeveloped wetlands."  28 F.3d at 1180.  In *Florida Rock,* the Federal Circuit remanded the action for further proceedings, but "affirm[ed] ... the trial court's refusal to determine that land was taken in excess of the 98 acres as to which [plaintiff's mining] permit was sought." 791 F.2d at 906.  The Federal Circuit indicated that only 98 acres of plaintiff's 1560–acre tract comprised the relevant parcel for the takings analysis because "it [wa]s and, for the immediate future, [would] remain[ ] illegal to mine [the balance of the property] without a permit in the only fashion [plaintiff] consider[ed] feasible." *Id.* at 904.  In *Whitney Benefits,* the Federal Circuit affirmed the trial court's findings that "the *only* property here involved is the right to surface mine a particular deposit of coal" and that the enactment of the Surface Mining Control and Reclamation Act of 1977 "did not merely regulate" but took all of the particular property involved in the case.  926 F.2d at 1172.

In the foregoing cases the trial courts excluded from the relevant parcel determination those parcels that could not be developed by the property owner because of legal or factual circumstances predating the regulation at issue.  In each of those cases, as here, the parcel excluded from the relevant parcel determination no longer had any economic value to the property owner either as part of the development plan at issue in the

7.  Plaintiff also argued that the application of the Landmarks Preservation Law violated the Four-

teenth Amendment.  *Penn Central,* 438 U.S. at 107, 98 S.Ct. 2646.

takings analysis or as part of any other development plan of the property owner.

While it is true that, under *Keystone, Andrus,* and *Tahoe–Sierra,* the cases cited by defendant, the court found that the parcel of land in interest could not be segmented into different physical, functional, or temporal interests, the Federal Circuit has repeatedly stated that, in determining the proper denominator for a takings analysis, a "flexible approach, designed to account for factual nuances" is favored. *Loveladies Harbor,* 28 F.3d at 1181. Recently, in *Palm Beach Isles Associates v. United States,* the Federal Circuit noted that "[i]n a given case, . . . factors [other than the timing of property acquisition and development] may be more compelling" in determining the denominator for a takings analysis, 208 F.3d 1374, 1381 (Fed.Cir.2000), an affirmation of the view that the particular facts of each case must be considered.

Here, the Secretary's June 2000 Unsuitability Determination issued pursuant to section 1272 of the Surface Mining Control and Reclamation Act,[8] the governmental act alleged to have effected a taking, occurred nearly fifteen years after the Wyatts' oil and gas interests in the Main Tract and in the Pilot Knob Tract ceased to be valuable. *See* Def.'s Recons. Mot. at 10 n. 5 (observing that "the Wyatts have not leased their oil and gas rights since 1986"). The court concludes that, on the facts of this case and consistent with case law, the Wyatts' valueless oil and gas interests in the Main Tract and in the Pilot Knob Tract are properly excluded from the relevant parcel determination.[9]

### III. The Wyatts' Reasonable Investment–Backed Expectations

■ In its May 28, 2004 decision, the court stated that "[i]t is not contested in the briefing that the entirety of the mineral interests acquired by the Wyatts in 1991 was covered by the Secretary's Unsuitability Determination." *Cane V,* 60 Fed.Cl. at 702. The court also noted that "[d]efendant . . . argues that there is an exception to the *Lucas [v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992),] categorical taking rule applicable to the property interests in this case because the mineral interests had no value when received." *Id.* at 702–03.

Defendant contends that, even if the relevant parcel is limited to the Wyatts' coal royalty interest and even if the Secretary's Unsuitability Determination has effected a denial of all economic value of that interest, "a categorical taking [cannot] be found with-

---

8. The Surface Mining Control and Reclamation Act is set forth at 30 U.S.C. §§ 1201–1328 (2000). Section 1272 of the Act describes the process by which areas are designated unsuitable for surface mining operations. 30 U.S.C. § 1272.

9. Defendant argued that all of the Wyatts' property interests must be included in the relevant parcel determination as "law of the case" because the court found that all of Cane's ownership interests—both its mineral interests and its ownership of the surface estate—comprised the relevant parcel for analyzing Cane's takings claim. *See* Def.'s Recons. Mot. at 7–8. The court finds this argument unavailing. As plaintiffs correctly point out in their opposition briefing, "The law of the case doctrine does not operate to preclude the *court* from revisiting an issue, particularly with reference to the different factual circumstances of different parties." Pls.' Opp'n at 7 (citing *Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1550 (Fed.Cir. 1988), *overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020 (Fed.Cir.1992)).

In *Jamesbury Corporation,* the Federal Circuit stated:

> At the trial level . . ., the law of the case is "little more than a management practice to permit logical progression toward judgment." [While] [o]rderly and efficient case administration suggests that questions once decided not be subject to continued argument, . . . the court has the power to reconsider its decisions until a judgment is entered.

839 F.2d at 1550 (footnotes omitted).

The court has applied the parcel as a whole rule in analyzing the takings claims in this case brought by different parties with different ownership interests. Accordingly, the court's relevant parcel determination for Cane does not relieve the court of its responsibility to examine the Wyatts' property interests and make a relevant parcel determination for the court's analysis of the Wyatts' takings claim. The law of the case doctrine cannot be applied here. *See Rite–Hite Corp. v. Kelley Co.,* 56 F.3d 1538, 1554 n. 12 (Fed.Cir.1995) (declining to apply the law of the case when the court addresses arguments and evidence that were not before the court at the time it issued an earlier decision).

out consideration of the Wyatts' reasonable, investment-backed expectations." Def.'s Recons. Mot. at 11–12 (footnote omitted). Defendant asserts that whether the court analyzes the Wyatts' regulatory takings claim under *Lucas* or *Penn Central,* it "must consider whether the Wyatts had reasonable investment-backed expectations." *Id.* at 13–14.

Defendant states that, contrary to the court's understanding, it is not arguing that there is an exception to the *Lucas* categorical takings rule that applies to property that has no value when received. *Id.* at 12–13. Rather, defendant explains, it is arguing that the income previously received by the Wyatts from leasing their now valueless oil and gas interests in the Main Tract and the Pilot Knob Tract should be "factored into the economic impact calculus."[10] *Id.* at 10. Defendant contends that, in *Good v. United States,* the Federal Circuit held that " 'reasonable investment-backed expectations are an element of every regulatory takings case' even if all economically viable use of the property has been denied." *Id.* at 14 (quoting *Good,* 189 F.3d 1355, 1361 (Fed.Cir.1999), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000)). Defendant argues that the court's reliance on the Federal Circuit's subsequent decision in *Palm Beach Isles Associates v. United States* that investment-backed expectations do not need to be considered in a categorical takings claim is misplaced. *See id.* (citing *Palm Beach Isles,* 208 F.3d 1374, *on reh'g,* 231 F.3d 1354, *denying reh'g en banc,* 231 F.3d 1365 (Fed.Cir.2000)). In its analysis of *Lucas* and *Loveladies Harbor,* defendant states that *Good* is consistent with these two earlier cases, *id.* at 14–20, and that, as binding precedent, *Good* cannot be overruled by a subsequent decision of the Federal Circuit absent en banc consideration, *id.* at 20 (citing Fed. Cir. R. 35(a)(2); Fed. Cir. I.O.P. 13, ¶ 1).

Plaintiffs assert that defendant improperly relies on Justice Kennedy's concurrence in *Lucas,* Pls.' Opp'n at 9, which states, "Where a taking is alleged from regulations which deprive the property of all value, the test must be whether the deprivation is contrary to reasonable, investment-backed expectations," *Lucas,* 505 U.S. at 1034, 112 S.Ct. 2886 (Kennedy, J., concurring). Plaintiffs state that "[a]lthough Justice Kennedy's concurring opinion is instructive, it was not necessary to reach a majority, and is not controlling precedent." Pls.' Opp'n at 9. Plaintiffs contend that the Supreme Court affirmed in *Tahoe–Sierra* the *Lucas* rule that a categorical takings arises upon a showing, without more, of total deprivation of economic value. *Id.* at 10 (quoting *Tahoe–Sierra,* 535 U.S. at 330, 122 S.Ct. 1465).

Plaintiffs argue that in *Palm Beach Isles,* the Federal Circuit also interpreted *Lucas* as "holding that investment-backed expectations are not part of the categorical takings calculus." *Id.* at 10. Plaintiffs contend that, contrary to defendant's assertions, the Federal Circuit determined in *Palm Beach Isles* that it had not directly decided the investment-backed expectations issue in *Loveladies Harbor* and in *Good,* the earlier Federal Circuit decisions on which defendant relies. *Id.* at 11. Plaintiffs also note that defendant fails to address the Federal Circuit's decision in *Florida Rock* which preceded the decisions in *Loveladies Harbor* and in *Good* and stated that investment-backed expectations are not relevant in a categorical takings analysis. *Id.* at 12 n. 6.

The court believes the dispute can be resolved by reading the subsequent case law in the light of the majority opinion in *Lucas.* Five of the Supreme Court Justices joined in the 1992 *Lucas* decision, 505 U.S. at 1005, 112 S.Ct. 2886, stating that a categorical taking occurs "where [a] regulation denies all economically beneficial or productive use of [a claimant's] land." 505 U.S. at 1015, 112 S.Ct. 2886. The Supreme Court explained, however, that compensation under the Takings Clause is not required when a regulation bars an owner from putting land to a use

---

**10.** Defendant points out that the Wyatts received more than $300,000 in income from their oil and gas interests between 1968 and 1986 under three separate leases. *Id.* at 9–10. Defendant adds that the Wyatts' oil and gas interests in the 7900– acre Main Tract and the 640–acre Pilot Knob Tract comprised approximately one-third of the total acreage covered by the three income-generating oil and gas leases predating 1987. *Id.* at 10 n. 6.

that is proscribed by " 'existing rules or understandings that stem from ... state law.' " *Id.* at 1030, 112 S.Ct. 2886 (citations omitted). In a concurring opinion, Justice Kennedy alone stated that an inquiry into a claimant's reasonable investment-backed expectations is required for all takings claims. *Id.* at 1034, 112 S.Ct. 2886 (Kennedy, J., concurring). This court regards the omission of that requirement from the majority opinion to mean that such requirement was not imported into the majority opinion and is not binding on this court. *See Alexander v. Sandoval,* 532 U.S. 275, 285 n. 5, 121 S.Ct. 1511, 149 L.Ed.2d 517 (2001) (noting that the "holding [of the majority] is not made coextensive with the concurrence because the[ ] [majority] opinion does not expressly preclude ... the concurrence's approach" and that "[t]he Court would be in an odd predicament if a concurring minority of the Justices could force the majority to address a point they found it unnecessary (and did not wish) to address"); *Bronson v. Board of Ed. of School Dist. of City of Cincinnati,* 510 F.Supp. 1251, 1265 (S.D.Ohio 1980) (stating that "concurring opinions have no legal effect, and thus, are in no way binding on any court").

Ten years later, in 2002, the Supreme Court stated in *Tahoe–Sierra:*

> The categorical rule that we applied in *Lucas* states that compensation is required when a regulation deprives an owner of *"all* economically beneficial uses" of his land. Under that rule, a statute that "wholly eliminated the value" of Lucas' fee simple title clearly qualified as a taking. But our holding was limited to "the extraordinary circumstance when *no* productive or economically beneficial use of land is permitted." The emphasis on the word "no" in the text of the opinion was, in effect, reiterated in a footnote explaining that the categorical rule would not apply if the diminution in value were 95% instead of 100%. Anything less than a "complete elimination of value," or a "total loss," the Court acknowledged, would require the kind of analysis applied in *Penn Central.*

*Tahoe–Sierra,* 535 U.S. at 330, 122 S.Ct. 1465 (citations and footnotes omitted). Based on the statement in *Tahoe–Sierra* that "[a]ny-

thing less than ... a 'total loss' ... require[s] the kind of analysis applied in *Penn Central,*" *id.,* this court concludes that when a property owner is, in fact, deprived of all economically viable use, a *Penn Central* analysis is not required.

In the interim between the *Lucas* and *Tahoe–Sierra* decisions, the Federal Circuit issued four decisions, *Florida Rock, Loveladies Harbor, Good* and *Palm Beach Isles,* addressing the role of a claimant's reasonable investment-backed expectations in a categorical takings analysis. This court considers the guidance provided in these decisions regarding the proper analysis of a categorical takings claim.

In *Florida Rock,* the Federal Circuit affirmed the trial court's determination that, of the 1560 acres of land purchased by the limestone mining company, the relevant parcel for a takings analysis was the 98 acres of land for which the property owner sought a dredge and fill permit from the Army Corps of Engineers. 791 F.2d at 895, 906. The Federal Circuit, however, vacated the trial court's decision that the Corps' denial of the dredge and fill permit, under authority of the Clean Water Act, effected a taking of the limestone mining company's property. *Id.* at 895, 906. The trial court had taken the position that "if there was, under the regulation, *no allowable and practicable immediate use* [of the owner's property], this established a taking regardless of the impact of the regulation on [the property's] fair market value, even if [the regulation] had no impact [on the fair market value of the owner's property]." *Id.* at 901 (emphasis added). Reviewing the "standards for determining when a regulation constitutes a taking," the Federal Circuit quoted from the Supreme Court's decision in *Connolly v. Pension Benefit Guaranty Corporation,* 475 U.S. 211, 106 S.Ct. 1018, 89 L.Ed.2d 166 (1986):

> [W]e have eschewed the development of any set formula for identifying a "taking" ... and have relied instead on ad hoc, factual inquiries into the circumstances of each particular case.... To aid in this determination, however, we have identified three factors which have "particular significance:" (1) "the economic impact of the

regulation on the claimant"; (2) "the extent to which the regulation has interfered with distinct investment-backed expectations"; and (3) "the character of the government action."

*Id.* at 900–01 (quoting *Connolly,* 475 U.S. at 224–25, 106 S.Ct. 1018 (omitting internal citations)). The Federal Circuit explained that, by "dispensing with the fair market value test" in its analysis of whether a taking had occurred, *id.* at 903, the trial court had failed to ascertain whether the permit denial had denied the property owner of all economically viable use of its property, *see id.* at 901, 903. The Federal Circuit observed:

> Indeed, if there is found to exist a solid and adequate fair market value (for the 98 acres) which Florida Rock could have obtained from others for that property, that would be a sufficient remaining use of the property to forestall a determination that a taking had occurred or that any just compensation had to be paid by the government.

*Id.* at 903. The Federal Circuit remanded the matter for further findings. *Id.* at 906.

In *Loveladies Harbor,* the Federal Circuit squarely addressed a regulatory takings claim brought by a property owner whose permit application to fill and develop certain wetlands in New Jersey had been denied by the Corps of Engineers. 28 F.3d at 1174–75. Guided by the Supreme Court's *Lucas* decision, the Federal Circuit articulated a three-pronged test for establishing that a regulatory taking has occurred:

(1) there was a denial of economically viable use of the property as a result of the regulatory imposition;

(2) the property owner had distinct investment-backed expectations; and

(3) it was an interest vested in the owner, as a matter of state property law, and not within the power of the state to regulate under common law nuisance doctrine.[11]

---

**11.** The Federal Circuit observed in *Loveladies Harbor* that the *Lucas* decision had effected a "sea change" in takings law by "dramatically chang[ing] the third criterion [under *Penn Central*], from one in which courts ... were called

*Id.* at 1179. Once it affirmed the trial court's decision that the Corps' permit denial deprived the property owner of all economically feasible use of the relevant parcel of land, the Federal Circuit did not go on to address the issue of whether the property owner had distinct investment-backed expectations, the second prong of the articulated test. *Id.* at 1182. Rather, the court continued its analysis by addressing the third prong of the regulatory takings test, stating that "[w]hat remains, then, in light of *Lucas* is consideration of the third criterion—the question of whether, under controlling law, the regulatory imposition goes beyond the Government's powers under common law nuisance doctrine, and thus constitutes a taking." *Id.* The Federal Circuit then found that the regulation went beyond the power of the state to regulate and affirmed the trial court's decision finding a taking. *Id.* at 1183.

In *Good,* the Court of Federal Claims found that the Corps' permit denial did not deprive the plaintiff residential property developer of all economically viable use of his property because the government proved that the property retained value. 189 F.3d at 1359–60. Applying a *Penn Central* analysis, the court found that, because the plaintiff lacked reasonable investment-backed expectations, no taking had occurred. *Id.* at 1360. On the property owner's appeal challenging the summary judgment decision finding that no regulatory taking had occurred, the Federal Circuit affirmed the decision of the Court of Federal Claims on the ground that the property owner lacked reasonable investment-backed expectations. *Id.* at 1357, 1363. The property owner had argued on appeal in the alternative: first, that its property had been rendered valueless and that the *Lucas* decision eliminated the requirement for an analysis of reasonable, investment-backed expectations in such a case, and, alternatively, that his investment-backed expectations were reasonable. *Id.* at 1361.

The Federal Circuit analyzed the case as a partial regulatory taking and, without dis-

upon to make ad hoc balancing decisions ... to one in which state property law, incorporating common law nuisance doctrine, controls." 28 F.3d at 1179.

turbing the decision of the Court of Federal Claims that the permit denial did not effect a "per se" or categorical taking, performed the type of *Penn Central* analysis required by the Supreme Court in *Tahoe–Sierra,* 535 U.S. at 330, 122 S.Ct. 1465, and in *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886, when a property owner suffers less than a total loss of all economic value of her property.

Referring to the three-pronged regulatory takings test articulated in *Loveladies Harbor,* the Federal Circuit stated:

> For *any regulatory takings* claim to succeed, the claimant must show that the government's regulatory restraint interfered with his investment-backed expectations in a manner that requires the government to compensate him.... These expectations must be reasonable.
>
> Reasonable, investment-backed expectations are an element of *every regulatory takings case.*
>
> ....
>
> [W]e agree with the *Loveladies Harbor* court that the Supreme Court in *Lucas* did not mean to eliminate the requirement for reasonable, investment-backed expectations to establish a taking.

189 F.3d at 1360–61 (citations omitted) (emphasis added). The court reads the references to "any regulatory takings claim" and "every regulatory takings case," in the factual context of *Good,* to refer to non-categorical regulatory takings.

In *Palm Beach Isles,* the Federal Circuit found that the denial of a dredge and fill permit deprived the real estate developer owners of all economically viable use of the relevant parcel of property. 208 F.3d at 1381. "Since there is a categorical taking of [the relevant parcel], the issue of [the property owner's] investment-backed expectations under [the second] prong of the *Loveladies Harbor* analysis is not applicable." *Id.* The Federal Circuit then considered the government's asserted defenses under the third prong of the *Loveladies Harbor* analysis. *Id.* Upon consideration of the third prong, the Federal Circuit vacated the grant of summary judgment and remanded the case for a determination of whether the government

had a navigational purpose for its permit denial. *Id.* at 1386–87.

In each of the foregoing decisions, the reviewing court identified substantially the same three-prong test for analyzing a regulatory takings claim. The first consideration under that analytical framework is to examine the economic impact of the regulation on the property owner. Evidence that the regulation completely eliminates the value of an owner's property establishes a categorical taking and makes a full *Penn Central* analysis unnecessary. *See Tahoe–Sierra,* 535 U.S. at 330, 122 S.Ct. 1465 (applying the "categorical rule" upon a finding of the " 'complete elimination of value' " of an owner's property) (quoting *Lucas,* 505 U.S. at 1019 n. 8, 112 S.Ct. 2886); *Lucas,* 505 U.S. at 1015, 112 S.Ct. 2886 (deprivation of "all economically beneficial or productive use" of owner's property effects a categorical taking); *Loveladies Harbor,* 28 F.3d at 1182 (upon finding a categorical deprivation of the economically feasible use of a parcel of property, the only remaining question is "whether, under controlling law, the regulatory imposition goes beyond the Government's powers under common law nuisance doctrine"); *Florida Rock,* 791 F.2d at 903 (observing that the existence of a "solid and adequate fair market value [for property] ... [demonstrates] sufficient remaining use of the property to forestall a [taking] determination" and supporting by negative inference the concept of a categorical regulatory taking which requires no inquiry into investment-backed expectations). The case law teaches that, in determining whether a categorical taking has occurred, the court must focus on evidence indicating whether or not any economically beneficial or productive use of an owner's property interest remains under the regulation. The court must consider, as part of its takings analysis, the reasonableness of the claimant's investment-backed expectations only when the evidence does not clearly establish that no economically viable use of the property remains. *See Palm Beach Isles,* 208 F.3d at 1381 (stating that when there is a categorical taking of the relevant parcel, "the issue of ... investment-backed expectations ... is not applicable" in the analysis).

Defendant disagrees with this analytical framework based on the Federal Circuit's pronouncement in *Good*, 189 F.3d at 1361, that reasonable investment-backed expectations are an element of every regulatory takings analysis. *See* Def.'s Recons. Mot. at 14–15; Def.'s Reply at 7–8. Because defendant construes the language in *Good* to apply even to categorical takings claims, defendant maintains that the *Good* decision has properly interpreted the Supreme Court's decision in *Lucas* and has established controlling precedent in the Federal Circuit. *See* Def.'s Recons. Mot. at 14–15; Def.'s Reply at 7–8.

Contrary to defendant's position, however, the court believes that its decision in *Cane V* is consistent with the teachings of the Supreme Court in *Lucas* and *Tahoe-Sierra* and with the relevant precedent of the Federal Circuit. With respect to defendant's contentions regarding the precedential weight of the *Good* decision, defendant relies, in part, on the dissent to the Federal Circuit's denial of the petition for en banc rehearing of the *Palm Beach Isles* decision. *See* Def.'s Recons. Mot. at 19–21; Def.'s Reply at 7–8 (citing *Palm Beach Isles Assocs. v. United States,* 231 F.3d 1365, 1373 (Fed.Cir.2000)) (Gajarsa, J., dissenting) (urging that "[b]ecause it was necessary to discuss the *Lucas* categorical test in order to show that investment-backed expectations were still relevant, the investment-backed expectations analysis in *Good* was necessary to the holding of that case"). The Federal Circuit itself, however, directly addressed on a petition for panel rehearing in *Palm Beach Isles* the issue presented here-specifically, whether it had "failed to follow its own controlling precedent [in *Good*] when it stated that, if a taking is 'categorical,' that determination removes from the analytical equation the question of investment-backed expectations." *Palm Beach Isles Assocs. v. United States,* 231 F.3d 1354, 1357 (Fed.Cir.2000) (decision on panel rehearing). The Federal Circuit stated that the general discussion in *Good* "about investment-backed expectations being an element of every regulatory takings case was ... dictum since the case does not turn on the application of expectations to a categorical taking." *Id.* at 1361. The Federal Circuit emphasized that "the single most impor-

tant fact in the [*Good*] case [was] that the case did not involve a categorical taking ... and [on appeal], the court repeated ... in its opinion the trial court's findings that 'the property retain[ed] value both for development, or for the sale of transferable development rights.' " *Id.* at 1360 (quoting *Good v. United States,* 39 Fed.Cl. 81, 84 (1997)). The appellate court denied the petition for en banc rehearing and reaffirmed its original opinion in which it treated "the categorical regulatory taking ... case before it as akin to a physical taking." *Id.* at 1357. Specifically, the Federal Circuit observed:

> In a physical taking context, the question is not why the owner acquired the property taken, but only did she own it at the time of the taking. Questions of whether the owner had reasonable investment-backed expectations at the time the property was first acquired are simply not part of the analysis.

*Id.* The Federal Circuit has squarely considered, addressed, and rejected the arguments raised here by defendant.

For the foregoing reasons, defendant's motion for reconsideration is DENIED.

IT IS SO ORDERED.